PERRY B. DUNN, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

298 N. W. 741

FILED JUNE 20, 1941. No. 30957.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Wear, Boland & Nye, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

In an action for personal injuries growing out of a collision between an automobile driven by the plaintiff and a street car operated by the defendant in the city of Omaha, a verdict of $5,000 was rendered for the plaintiff. Motion for new trial being overruled, defendant appealed.

In plaintiff's petition it is alleged that at 7:25 a. m., March 29, 1939, he was driving his automobile north on Thirty-second avenue in Omaha in a careful manner. He alleges that the entire east side of said avenue was torn up, being repaired by the Works Progress Administration, and was not open to traffic, so that the avenue was narrowed from its usual width; that snow had fallen and ice had frozen on the streets; that there were two street railway tracks in this avenue. He further alleges that he was going north on the east side of the traveled portion of the street, and that a street car and another automobile were going south; that, his progress being impeded, he stopped his automobile, but the motorman continued without slackening his speed, and without keeping a proper lookout; that when

the motorman saw, or in the exercise of ordinary care should have seen, the position of peril of the plaintiff, he did nothing to stop the car, but collided with plaintiff's automobile, damaging the same and causing the plaintiff to suffer serious injuries; that as a result plaintiff suffered a compound comminuted fracture of his left leg through the knee joint, and a wrenching and tearing of the ligaments and nerves in the right knee, severe laceration of his right forearm, and bruises and abrasions over his entire body, from which he lost a large amount of blood; that he was confined in Nicholas Senn Hospital for some days, and has been under the constant care and attention of physicians and surgeons since the date of the accident; that his automobile was completely demolished.

Defendant in its answer admits that it was running a south-bound Benson-Grover street car; that it had made a safety stop, and started across Creighton avenue, and was going south when the collision occurred; that the collision was the direct and proximate result of negligence of plaintiff, which was more than slight, in that he put on his brakes, so as to cause his car to skid directly into the street car, and in driving his car at a careless, negligent, and excessive rate of speed under the circumstances, causing it to move into the pathway of the street car, which was in plain view, and alleges that its motorman was not guilty of any negligence contributing to the cause of the accident.

In the motion for a new trial, the defendant sets out 58 errors which occurred in the trial, exception being taken to each of the 17 instructions given to the jury by the court on its own motion, and alleging that the court erred in rejecting each of the 32 instructions tendered by the defendant. It is also alleged as error that the verdict returned by the jury is grossly excessive and not sustained by sufficient evidence. All of these allegedly prejudicial errors set out by the defendant are presented under seven propositions of law in its brief.

Plaintiff testified that he was 35 years old, and ran the barber shop in the Wellington Hotel, having two men work-

ing for him; that on the morning of the accident he was driving to work in his Ford sedan, which had only been driven 17,000 miles; that while driving north on Thirty-second avenue, at about 25 miles an hour, with wet snow and slush on the pavement, he saw the street car coming towards him; that his car skidded on the street car rails, and went out of control, angling northwest, and finally came to a stop in this angling position, with about a foot and a half of the front end of it over the east rail of the south-bound track, in the path of the approaching street car, which was then 60 or 75 feet away. His motor was dead. The street car kept coming, and plaintiff honked his horn half a dozen times, but the street car did not slow up, and crashed into him while his car was standing still. The evidence further shows that the motorman did not sound his gong; that the street car did not stop before the collision.

The motorman testified that he could have stopped his car in three or four feet at that speed, and the left side of the front bumper on the street car struck the right front side of the Ford, crushing in the front of the Ford. Several witnesses testified in support of plaintiff's explanation of how the collision occurred.

On the other hand, the defendant's theory is that the plaintiff was driving his car north on the north-bound tracks, intending to pass the south-bound street car on the east side, and driving at 25 miles an hour, and in some manner got his right rear wheel over the east rail of the north-bound track down onto the concrete base, where the paving bricks had been removed, when he was within 25 feet of the street car, and in an effort to pull that wheel back his car skidded, and he got the front end of his car over into the south-bound track, and the impact occurred when both were in motion. Certain witnesses of the defendant company support this explanation of how the collision occurred.

If one of these explanations of the collision was true, the other must be false, as the evidence cannot be reconciled in any way whatever. The evidence of all these witnesses, and the arguments in support of each theory, were sub-

mitted to the jury, and the jury, being the judge of the credibility of all of the witnesses, must have accepted practically *in toto* the plaintiff's explanation of how the accident happened.

The jury would be warranted in reaching this conclusion if they believed the evidence given by the plaintiff and his witnesses. To arrive at this conclusion, the jury must have entirely rejected the theory of the defense that the automobile was moving at a good rate of speed and crashed into the street car while it was moving at an average speed.

The jury were clearly instructed by the court in instruction No. 2 that "The defendant alleges that the collision in question was the direct and proximate result of the negligence of the plaintiff which was more than slight in the following particulars:

"(a) That the plaintiff carelessly and negligently put on his brakes so as to cause his car to skid around and to skid directly into the defendant's street car.

"(b) In carelessly and negligently operating its car so as to turn it towards the north and west, and bring it into contact with defendant's car.

"(c) In carelessly and negligently driving said automobile at an excessive rate of speed under the circumstances.

"(d) In carelessly and negligently failing to avoid a collision.

"(e) In carelessly and negligently driving his (automobile) so as to cause it to move into the pathway of defendant's oncoming car, which was in plain view."

The jury, having these various acts of negligence charged against the plaintiff set before them in detail and at length, must have rejected the defendant's theory of the case.

The first proposition of law set out by the defendant is that, where the verdict of the jury is clearly against the weight of the evidence, this court must find that it was arrived at through passion, prejudice, or mistake, and grant a new trial. In our opinion, the verdict is not against the weight or reasonableness of the evidence viewed as a whole.

"In a law action, a verdict of a jury based on conflicting

evidence will not be disturbed unless clearly wrong." *Porterfield v. Buffalo County Public Power District*, 138 Neb. 720, 295 N. W. 379. See, also, *Parkert v. Department of Public Works*, 131 Neb. 346, 267 N. W. 925; *Tidd v. Stull*, 128 Neb. 506, 259 N. W. 369; *Kraemer v. New York Life Ins. Co.*, 134 Neb. 445, 278 N. W. 886.

"Disputed questions of fact, as well as the credibility of witnesses, are for the determination of the jury; and a verdict will not be disturbed on the ground that it is not supported by the evidence, where there is sufficient competent evidence to sustain it." *Utilities Ins. Co. v. Stuart*, 134 Neb. 413, 278 N. W. 827.

The defendant, for its second proposition of law, claims that its street car was in motion, and that when the oncoming automobile was 25 feet away from the street car it slipped or skidded so as to come in contact with the moving street car, the automobile at all times being in motion, and insists that the defendant was entitled to an instruction that, if the evidence disclosed that the plaintiff's automobile was in motion at the time of the collision, the verdict should be for the defendant. A sufficient answer to this is found in instruction No. 12, as given by the court, which reads as follows: "You are instructed that if you believe from the evidence that the plaintiff's automobile slid from the pavement onto the concrete base to the east of the east rail and that plaintiff either swerved back towards the west or his wheels caught, forcing his car back towards the west, and that immediately thereafter the automobile ran into the street car, the automobile at all times being in motion without affording the operator of defendant's street car a sufficient opportunity, in the exercise of ordinary care, to avoid a collision, then your verdict should be for the defendant."

The third proposition of law of the defendant is that a party to an action is entitled to have the jury instructed with reference to his theory of the case, when the pleadings present the theory, and it is supported by competent evidence. It is our conclusion that the court very clearly and

repeatedly, in various forms, presented the defendant's theory of the case, and instructed the jury, in instructions Nos. 4, 5, 6 and 12, that if the evidence supported that theory their verdict should be for the defendant.

The fourth proposition of law, relating to plaintiff's automobile being in motion, has already been covered.

The fifth proposition of law charges that it is highly improper for counsel in a trial to make remarks within the hearing of the jury, either in the argument or in the trial of the case, which tend to create a prejudice against the other party. From reading the bill of exceptions and the remarks of counsel found therein, both in making objections and otherwise, it is our opinion that two experienced trial lawyers did everything allowed in the trial of a case to win a verdict for their clients, and that one was deserving of rebuke no more than the other.

Another assignment of error charges that the rights of the defendant were prejudiced by misconduct of counsel for plaintiff in reference to the witness Herbert F. Johnson.

Exhibit No. 18, attached to the bill of exceptions, is the affidavit of G. L. DeLacy, attorney for the defendant, the street railway company. A portion of this affidavit reads as follows: "Affiant further says that during the progress of the trial, after a certain witness for the defendant had testified, and after he had left the stand, Mr. Porter, of the Claim Department of the Street Railway Company, who sat with your affiant during the trial, stepped out into the hall and paid the witness a witness fee, plus lost time, or a total of $6. That said witness was called late in the afternoon, and that he had been available all day and had been required to be away from his employment, for which he was paid the sum of $4.12 per day. That plaintiff's attorney sent his associate, Mr. McCormack, out into the hall, and brought the witness back, whereupon Mr. Boland asked leave to interrupt the testimony of the witness then on the stand, and placed the first mentioned witness on the stand and asked him if Mr. Porter gave him some money out in the hall. The witness stated that he did. Mr. Boland

then asked him the amount, and the witness stated $6. * * * That the effect of such statements and the effect of Mr. Boland recalling to the witness-stand the witness who had been paid the $6, was prejudicial to the rights of the defendant and prejudiced the defendant in the verdict of the jury, and that it was done for that purpose and that it accomplished its purpose."

Turning to the bill of exceptions, we find that Herbert F. Johnson, a W. P. A. laborer, was a passenger on the street car, and was excused, and recalled for further cross-examination. "By Mr. Boland: Q. Mr. Porter has just given you some money, hasn't he, that man that followed you out into the hall? A. Yes, he did. Q. How much did he give you? A. $6. By Mr. DeLacy: Q. That's the time you lost, isn't it? A. That's right. Q. And he told you when you came over here that he would pay your witness fee and the time you lost? A. Yes, he did. Q. And you came to my office this morning and you have lost the whole day? A. Yes; I lost eight hours today coming down here. Q. And you told him that was what your time was? A. That's right. By Mr. Boland: Q. How much do you get a day? A. $.53 an hour, $4.24. The witness excused."

Not a single objection was made by attorney for defendant, and the jury had all the facts presented to them, and we see no prejudicial error in this examination.

In the same affidavit of Mr. DeLacy, filed with the court during the argument on the motion for a new trial: "Affiant further states that when Mr. Boland was making his closing argument to the jury, he stated that he had been watching Mr. Porter do this and stated that he was going to put a stop to this practice." The bill of exceptions discloses no objection made at the time.

"Where it is claimed that an attorney is guilty of misconduct in arguing a case to a jury, and it is desired to raise a question on that point for decision in the supreme court, it is necessary that objection be made to the trial court *at the time,* and an adverse ruling had thereon, and that the same be made a part of the record by a proper bill of

exceptions." *Thornton v. Davis,* 113 Neb. 529, 204 N. W. 69.

" 'One may not complain of misconduct of adverse counsel if, with knowledge of such misconduct, he does not ask for a mistrial, but consents to take the chances of a favorable verdict.' *Triplett v. Lundeen,* 132 Neb. 434, 272 N. W. 307." Long v. Crystal Refrigerator Co., 134 Neb. 44, 277 N. W. 830.

In this case it is clear that the first objection made to this remark is made in an affidavit filed at the time of the argument on the motion for new trial. No opportunity was given to the court to rule thereon, or to caution the jury, if necessary. In our opinion this objection comes too late.

The same matter is presented to the court in instruction No. 6, requested by counsel for defendant, and refused by the court, which instruction reads as follows: "You are instructed that during the course of the trial when a defendant's witness left the stand, he was recalled and testified that he was paid the sum of Six Dollars and testified that this covered his witness fee and loss of time. Now you are instructed that it was perfectly proper for the defendant when calling a witness to agree to pay or to pay a witness fee and any time lost by the witness or expense incurred by the witness."

This court said in *Rising v. Nash,* 48 Neb. 597, 67 N. W. 460: "An instruction which gives undue prominence to subordinate elements of the issues and is calculated to mislead the jury, is erroneous and its giving may call for a reversal of the judgment."

It has been held that, if an instruction directs attention to, and unduly emphasizes, a part of the evidence in the case, it is properly refused. *City of South Omaha v. Wrzesinski,* 66 Neb. 790, 92 N. W. 1045; 13 Standard Ency. of Procedure, 792.

"It is no part of the duty or province of the court to give instructions which are in the nature of argument rather than declarations of established rules of law, or which are arguments for or against a theory rather than submissions

of questions of fact." 13 Standard Ency. of Procedure, 797.

"It is a' general rule that the instructions should not broaden the issues made by the pleadings or present issues not raised thereby, and if a charge is requested which is not relevant to an issue in the case, it should be refused, and it is immaterial that it states a correct principle of law." 1 Blashfield, Instructions to Juries (2d ed.) 177, sec. 79.

In our opinion, it was not prejudicial error for the trial court to refuse to give the instruction relating to the payment of a witness fee.

The sixth proposition of law assigned for reversal is that the verdict was so excessive as to indicate passion and prejudice on the part of the jury.

Taking the plaintiff's evidence as to injuries, it is proved that the collision resulted in a laceration of plaintiff's right arm, which was properly sutured, and which has caused no permanent disability. He also suffered a plateau fracture of both the tibia and fibula in the knee joint. He was completely immobilized and kept in a cast for more than two months, then walked on crutches and used a cane for some seven weeks.

The testimony of Drs. Sucha and Iverson established without contradiction that, while a good result had been obtained, the leg would cause disability and pain for a period of approximately 15 months from the date of the accident. The plaintiff is a barber, and he necessarily must stand on his feet in order to earn his living. The pain and suffering were intense.

The plaintiff testified that his own earnings and those of his two men—for he ran a three-man barber shop in the Wellington Hotel—were between $50 and $55 a week, and that in the five and a half months he only received $90, which would make an actual loss of around $1,000. His car was worth $575 before it was wrecked, and he traded it in for $185, a loss of $390. His hospital bill was $68.05. The combined bill of Dr. Sucha and Dr. Iverson is $300, which makes his money loss some $1,758.05.

The plaintiff will require several months further convalescence, was the testimony at the trial, and the leg muscles one inch above and one inch below the knee have shriveled, probably from lack of use. For these damages the jury returned a verdict against the defendant street car company in the amount of $5,000.

In conclusion, it is the opinion of this court that the verdict of the jury in the case at bar was not excessive in view of the evidence, and does not appear to have been influenced by passion or prejudice. The judgment will be affirmed as rendered.

AFFIRMED.