SOREN JONASEN v. GEORGE W. KENNEDY.

FILED FEBRUARY 7, 1894.    No. 5153.

1. **Malicious Prosecution:** DEFENSE: ADVICE OF COUNSEL. In an action for malicious prosecution, in order that reliance upon the advice of counsel may operate as a defense, it must be made to appear that before instituting the prosecution the defendant had made a full, fair, and true statement to such counsel of all the information in his possession, and that he instituted the prosecution in good faith, relying upon such advice.

2. ———: ———: ———. The evidence to establish such defense must show what facts, information, and circumstances were communicated to counsel, and it is not competent for a witness to testify that he related all the circumstances without stating what they were; the inference as to what circumstances would constitute a proper disclosure being for the jury and not for the witness to draw.

3. ———: ———: ———. It is not error for the court to refuse an instruction submitting such a defense to the jury where there is no competent evidence tending to show that a true and full statement had been made to counsel.

4. ———: INSTRUCTIONS: EVIDENCE. Where the criminal charge made by defendant against plaintiff was for the larceny of a ring, and the evidence tended to show that a ring, which defendant believed to be the one stolen, was found in plaintiff's possession, but there were no facts or circumstances other than the possession of the ring pointing towards plaintiff's guilt, and it was not shown how long the theft had occurred before the ring

was found in plaintiff's possession, it was not error to charge the jury that the mere fact that the defendant had lost a ring by theft, and that he suspected or believed that the ring found in plaintiff's possession was the ring which he had lost, was not of itself sufficient to constitute probable cause for the arrest of the plaintiff.

5. ———: PROBABLE CAUSE: INSTRUCTIONS. It is not error to charge the jury that probable cause is a reasonable ground for suspicion supported by circumstances sufficiently strong to warrant an impartial and reasonably cautious man in the belief that the person accused is guilty of the crime with which he is charged, where, by other instructions, the jury is told what facts under the evidence in the case, if found by the jury, would constitute probable cause or want thereof.

6. ———: INSTRUCTIONS. Error cannot be predicated upon the giving of an instruction substantially similar to one requested by the party seeking to reverse the judgment.

7. ———: ———. It is not error to refuse an instruction confining the jury, in determining whether or not there was probable cause, to the information in defendant's possession when he instituted the prosecution, and excluding facts subsequently coming to his notice, when there was no evidence tending to show that any of the facts relied upon to establish a want of probable cause were not known when the prosecution was instituted.

8. Witnesses: OBJECTIONS: REVIEW. It is not prejudicially erroneous to sustain an objection to a question proper in itself when in the course of the examination of the same witness he is permitted to answer questions substantially similar in their nature.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*Hall, McCulloch & English*, for plaintiff in error.

*George S. Smith* and *J. S. Miller, contra.*

IRVINE, C.

Kennedy recovered a judgment against Jonasen for $500 and costs for malicious prosecution. This judgment Jonasen seeks to reverse. The action grew out of the follow-

ing state of facts: Jonasen was a jeweler in Omaha. At
some time, not definitely appearing from the evidence, a
diamond ring had been stolen from the top of a show-case
in Jonasen's place of business, where it lay with other
jewelry which he was showing to some one, ostensibly a
customer. He reported the loss of this ring to the police
authorities. The 16th of November, 1889, Kennedy
visited two or three jewelry stores in Omaha, seeking to
have some jewels reset. His testimony tends to show that
his businesss consisted in traveling over the country sell-
ing jewels, especially diamonds, generally to individual
purchasers, but sometimes to dealers. One of the jewelers
whom he visited reported his actions to the police. Two
officers went to the store of Mr. Van Cott, which had been
one of the places visited, and while they were making in-
quiries of Van Cott in regard to the transactions reported
to them, Kennedy entered, and, overhearing a portion of
the conversation, stated to the officers that he was probably
the man they were inquiring about. At their request he
accompanied them to the police station. Jonasen was sent
for. A number of diamonds and a quantity of jewelry
were found on Kennedy's person. They were placed upon
a table, and when Jonasen entered, he identified a particu-
lar ring as that which had been stolen from him. The
diamond in this ring had a flaw in it, described by the
witnesses as a "small nick." This was called to Jonasen's
attention, he stating that his diamond was perfect. Scales
were brought and the diamond weighed. The scales
showed that it weighed less than Jonasen's. As to the
amount of difference there is a conflict in the evidence.
The diamond was subsequently weighed upon other scales,
all disclosing a weight less than that of Jonasen's diamond.
A complaint was sworn to by Jonasen charging Kennedy
with the larceny of his ring, and Kennedy was arrested
and imprisoned for several hours, when he was released on
bail. When the time came for a preliminary examination,

Jonasen refused to testify positively that the ring found in Kennedy's possession was the one which had been stolen from him. The prosecuting officer then dismissed the case. Jonasen testifies that Kennedy was not the man to whom he was showing the jewelry at the time the ring was stolen. Two witnesses, men engaged in business in Omaha, testified that they called at the police station and, before the complaint was made, assured Jonasen that they had known Kennedy for a number of years; that they had reason to believe him honest and that his business was as he claimed it to be. Jonasen contradicts one of these witnesses absolutely, and says that he had no conversation with the other until after the arrest was made. There is also testimony tending to show that when the scales developed the difference in weight of the diamonds, Jonasen remarked, in effect, that he did not believe that Kennedy came by the stone honestly and was going to make him prove how he got it. We think that this statement of the evidence sufficiently answers Jonasen's assignment of error, that the court erred in refusing to direct a verdict for the defendant.

The plaintiff asked the following instruction, which was refused:

"If the jury believe from the evidence that Assistant County Attorney Shea was made acquainted with all of the facts affecting the question of the guilt of the plaintiff in this case which were known by the defendant in this action at the time the complaint was filed, and that after being made so acquainted with the material facts, the assistant county attorney drew the complaint which was afterwards sworn to by the defendant in this action upon the advice of said attorney, the presumption of malice is rebutted and the action for malicious prosecution will fail, and you will find for the defendant."

In order that the defendant in an action for malicious prosecution may be protected from liability because of following the advice of counsel, it must be made to appear

that before instituting the prosecution he made a true, full, and fair statement of all the facts upon which the complaint was based, was thereupon advised that he had grounds for prosecution, and that in good faith he acted solely upon that advice. (*Dreyfus v. Aul*, 29 Neb., 191; *Turner v. O'Brien*, 5 Neb., 542.) The evidence was not sufficient to warrant the jury in finding such a state of facts. Jonasen's testimony fails entirely to show what was said to the prosecuting attorney, except as follows: "What was said in his presence about the circumstances surrounding this case? Ans. I think he was standing by the table when we were discussing the matter. I claimed the difference could be the difference in that nick of the stone, and Mr. Kennedy claimed that it could not. That was the difference; that is the reason I don't have the diamond to-day." The witness Hays, a police officer, states that he saw Shea before the complaint was drawn and told him the circumstances under which Kennedy had been brought to the police station and about Jonasen's identifying the ring, but he does not say what the circumstances were which he related to him. In order to make this defense available the communications with the attorney must be proved. Then it is for the jury to say whether or not the statement was true and full. A witness cannot be permitted to draw that inference for the jury by testifying in general language that he did make a full statement or that he told all the circumstances. The instruction was rightly refused.

The court charged the jury as follows:

"The mere fact that the defendant had lost a diamond ring by theft, and that he suspected or believed that the ring which he found in plaintiff's possession was the ring which he had lost, was not of itself sufficient to constitute probable cause for the arrest of the plaintiff for the theft of the ring, and if he, the defendant, caused the arrest of the plaintiff for the larceny of the ring, based upon such belief only, he, the defendant, assumed the responsibility

of being able to support his belief by proof of the fact that the ring found in plaintiff's possession was the identical ring which was stolen from the defendant, and if he could not produce sufficient testimony to establish that fact, and if, in addition thereto, he had no reasonable ground to believe that the plaintiff was the one who had stolen his (defendant's) ring, then the defendant had no probable cause for the arrest of the plaintiff for the larceny of the ring."

This instruction was correct. The plaintiff in error places too narrow a construction upon it. He construes it as conflicting with the rule that the possession of property shown to have been recently stolen is sufficient evidence to support a charge of larceny against the person having possession. The rule referred to states an inference of fact rather than of law; in other words, that the jury may find a prisoner guilty of larceny upon such evidence, but is not required to do so. And it is only permitted to so base a verdict of guilty where the property is found in the possession of the defendant recently after its theft. (*Thompson v. People*, 4 Neb., 524; *Smith v. State*, 17 Neb., 358.) In this case it was not shown when the ring had been stolen from Jonasen. It was shown affirmatively that Kennedy was not the person in Jonasen's store when the ring was stolen, and the rule referred to is, therefore, not applicable to the case. The instruction was that it was not sufficient, in order to make out a case of probable cause, that Jonasen should have lost the ring by theft and that he should suspect or believe that the ring in the plaintiff's possession was his; and, in effect, the remainder of the instruction was that in order to constitute probable cause defendant must have been able to produce sufficient testimony to identify the ring as his, and also have reasonable ground to believe that Kennedy had stolen it. It was a correct statement of the law. The identity of the ring was a fact particularly within Jonasen's knowledge, and no mere suspicion or

belief upon his part that the ring in Kennedy's possession was his could justify his conduct, unless by his own testimony or otherwise he was prepared to prove such identity. And in addition to establishing the identity of the ring, there being no evidence that it was in Kennedy's possession recently after the theft, and in view of the positive evidence that Kennedy was not the man who probably stole it from its place on Jonasen's show-case, Jonasen should, in order to justify the complaint, have been informed of other facts sufficient in the minds of reasonable men to justify him in believing that Kennedy was the thief.

Another instruction given by the court was as follows:

" 'Probable cause' is defined to be a reasonable ground for suspicion supported by circumstances sufficiently strong to warrant an impartial and reasonably cautious person in the belief that the person accused is guilty of the crime with which he is charged. If, therefore, you believe from all the testimony that there was reasonable ground for suspicion against the plaintiff, supported by such facts and circumstances as would have led an impartial and reasonably cautious man to believe that the plaintiff was guilty of the crime with which he was charged by the defendant, then you will be justified in saying that there was probable cause for the arrest of the plaintiff upon the complaint made by the defendant against him; otherwise, not."

It is urged that this instruction left the jury to determine the question of probable cause. There is no doubt that it is the duty of the court to say what facts constitute want of probable cause, and it is for the jury to determine whether such facts exist. But there are two reasons why the judgment should not be reversed on account of this instruction. The first is that at the request of the defendant himself the court gave the following instruction:

" The jury are instructed that if you believe from the evidence, that defendant had probable cause for instituting the criminal proceedings, then the plaintiff cannot

recover in this suit. 'Probable cause' is defined to be reasonable ground for suspicion, supported by circumstances sufficiently strong to warrant an impartial and reasonably cautious man in the belief that the person accused is guilty of the offense of which he is charged."

This is substantially like the one of which the defendant complains. A party cannot be heard to urge that an instruction is erroneous when he himself requested the giving of that instruction, or one similar in substance. Another reason is that the instruction was not erroneous. By it the court correctly defined the rule in regard to probable cause. (*Turner v. O'Brien*, 5 Neb., 542; *Ross v. Langworthy*, 13 Neb., 492.) The court in other instructions had told the jury what facts, if found by them to be true upon the evidence in the case, would establish a want of probable cause. In *Dreyfus v. Aul, supra*, relied upon by plaintiff in error upon this point, the court merely told the jury generally that it should find for the plaintiff if it found that the prosecution was commenced without probable cause, and in none of the instructions informed the jury what would constitute probable cause. That case is, therefore, not in point. It was not erroneous to tell the jury in general terms what the law meant by a " want of probable cause" when such instruction was accompanied by other instructions as to what facts would constitute want of probable cause in the case on trial.

The first instruction given by the court is complained of. This instruction was as follows:

" The court instructs the jury that if they believe from the evidence that the defendant maliciously caused the arrest and imprisonment of the plaintiff without probable cause, as alleged in the petition, then the jury should find for the plaintiff and assess his damages at what they think proper from the facts and circumstances proved, not exceeding, however, the amount claimed in the petition."

The same objection is urged to this,—that it left to the

jury the issue of probable cause. The same answer may be made to it. Instructions cannot be taken singly, but all instructions given must be taken together. If this instruction stood alone, it would be open to the objection urged against it. It is not erroneous in view of the other instructions.

The court refused the following instruction asked by defendant:

"The jury are instructed that in determining whether the defendant had probable cause to believe that the plaintiff was guilty they should consider that question in reference to the facts and circumstances relating thereto, and which influenced him in commencing proceedings against the plaintiff, as they were known or as they really appeared to be at the time he made the complaint, and not upon facts and circumstances as they have been developed by the evidence on this trial."

This instruction stated a correct principle of law, and the court might perhaps have given it without error, but there is no evidence in the record tending to show any information coming to Jonasen after he made the complaint which would throw a new light upon the question of Kennedy's guilt or innocence, and all of the instructions given by the court clearly enough confined the jury to a consideration of the facts within Jonasen's knowledge at the time the complaint was made.

During the examination of Jonasen the following question was asked: "Did you swear to that complaint with any malice towards Mr. Kennedy?" This question was objected to and the objection was sustained. It has been held in this state that where the issue is whether a transfer of property was made with intent to hinder, delay, or defraud creditors, it is proper to ask the assignor or vendor whether in making the transfer he did so with such intent. (*Campbell v. Holland*, 22 Neb., 587.) If such an inquiry is proper we see no reason why a direct inquiry as to

whether or not a prosecution was instituted from malicious motives is not also proper, and the inference from *Turner v. O'Brien, supra,* is that such evidence should be admitted. But when we turn to the record we find immediately after this ruling of the court the following:

Q. Had you ever known Mr. Kennedy before?

A. I never saw him.

Q. Had you any other motives in filing that complaint than to charge a crime against a person whom you supposed had committed it?

A. No, sir; I am no hater of the man. I could not have the least object in holding a stranger that I did not know.

Q. You say that you had never seen Mr. Kennedy before that?

A. I never saw him before I saw him at the police station, that I know of.

By this examination the defendant got all the benefit that he could have had from a direct answer to the question, and the exclusion of the particular question objected to was not prejudicial.

JUDGMENT AFFIRMED.